Loring, J.,
concurring :
I think the petitioner has not established the case he alleges. He sues the United States on bills of exchange accepted by procuration, and he is to prove the procuration; and this is to be done according to the rules of the common law, for procuration, or agency as to a bill of exchange is to be proved in the same way as procuration or agency as to a bond, or any contract not negotiable. And until the procuration or agency is proved the defendants are not shown to be parties to the bills in suit, and are in no way subjected by them to the law merchant or its rules.
By the law of agency, at the common law, there is this difference *600 between individuals and the government: the former are liable to the extent of the power they have apparently given to their agents, while the government is liable only to the extent of the power it has actually given to its officers. The rule as to individuals is founded on the equities of the parties. The rule as to the government is founded on public policy, which overrides the equities of parties; and hence the rule, so constantly used in this court, that the government is not liable for the unlawful acts of its officers, which necessarily means that such officers are not agents of the government for unlawful acts or frauds against itself.
As the United States acts only by its officers, in suits here the pro-curation has always to be proved, and it is always held to be disproved by proof that the act of the officer was unlawful, or even unauthorized, and the consequence is that no one, however innocent, can recover here upon that which was a fraud against the United States.
And in this case, upon the point of procuration, the question is, whether the record shows that Mr. Floyd acted unlawfully and fraudulently against the United States in making these acceptances; and if it does, then it shows that in that Mr. Floyd was not the agent of the United States, and that these acceptances are not theirs.
And I think the, record shows that these acceptances were given by Mr. Floyd to Bussell, Majors & Waddell to enable them to use the credit of the United States at the risk of the United States.
The evidence is, that Bussell, Majors & Waddell were contractors for transportation and supplies, on contracts with the War Department, running through, the years 1858, 1859, 1860, and that, by an arrangement between them and Mr. «Floyd, they received both the money earned on their contracts, as it became doe, and, from time to time, acceptances to the amount of six million one hundred and sixty-seven thousand 'three hundred and ninety-five dollars, which they were to take up and provide for, to prevent their coming to the treasury to implicate Mr. Floyd.
Mr. Bussell testifies as follows, (Beeord, p. 19 :) “ For the first several hundred thousand dollars, bills of lading and vouchers were returned to the Quartermaster General, whose assistant gave our firm checks on the United States treasurer at New York, which were delivered to our agent, who was deputed by the department to take up our acceptances.” And he then adds this: “ After which the department allowed us to draw the money accruing under our existing contracts, and to apply the same to the payment of the outstanding acceptances in our own way.”
*601 This is an explicit declaration that, after the first several hundred thousand dollars, Russell, Majors & Waddell received, subject only to their own control and pleasure, and to be applied in their own way, both the acceptances and the money earned on their contracts.
And that this was an arrangement made for a settled mode of dealing, is shown by the time for which it was continued and the large amounts to which it was extended; and that it was a part of the arrangement that the acceptances were to be prevented from coming to the treasury, is shown by what was done ; for Russell, Majors & Waddell took up and retired about four million and five hundred thousand dollars of these acceptances, and strove to provide for the residue, of about one million and seven hundred thousand dollars, even to the extremity of using the Indian bonds, with a full knowledge that they were dishonestly obtained for them; and the reason given by Mr. Russell is. his opinion that if the acceptances were protested, the Secretary would be likely to be disgraced, and have to retire from the cabinet. (Record, pp. 27, 2S.)
If the contractors were to receive the money earned on their contracts as it accrued, and the acceptances were not to be paid by the United States, but were to be prevented from coming to the treasury, then they were not, and were not intended to be, payments in advance, or payments at all, but they were merely the means of subjecting the credit of the United States to the use and abuse of Russell, Majors & Waddell, which, on the evidence, has resulted in its abuse to the extent (including the acceptances held in trust by the Interior Department) of one million seven hundred thousand dollars of outstanding claims against the United States, on paper like this in suit here.
I think the facts stated show that Mr. Floyd’s acceptance of the bills in suit was an unlawful act, in fraud of the United States, and that by the rule in the law of agency pertaining to the government, he was not, in making the acceptances, the agent of the United States, and that they are not bound by them.
And this conclusion does not conflict with the rule of the law mer-. chant, that the consideration of negotiable instruments cannot be inquired into in the hands of an innocent endorsee for value; for in the sense of that rule the consideration is not inquired into here : the question made is not on what consideration the United States became parties to the bills in suit, but whether they are parties to them at all. And the rule' referred to only operates between the parties to negotiable instruments, and the defendants are not parties to the bills sued upon till the procuration is proved, and with that the law merchant *602 lias nothing to do ; for it is a question of agency at the common .law, and it is to be governed by the rule of the common law pertaining to agencies of the government, by which no officer of the United States is their agent in making fraudulent acceptances, or any other unlawful act.
It is true that this may embarrass the negotiation of paper to which the government is a party by increasing the burden of proof and the difficulty of recovery upon it in litigation by an innocent holder for value; but to a degree this is always the effect of procuration, for the holder has always to prove the procuration, and .according to its kind, whether the ageney is general or special. And where the agency is special, to maintain the suit it must appear that the paper sued upon is within the terms which make the agency special. And under the rule of agency stated as pertaining to the government all its agencies are special, and the distinction between general and special agencies does not obtain as to the government. Judge Story says, “ the distinction between the effects of a general and special agency seems (as we shall hereafter see) to be limited to cases of private agency, and to be inapplicable to the case, of public agents who can bind the government or public authorities only to the extent of the power actually conferred on them.” (Story on Agency, p. 155.) In every case, therefore, it must appear that the officer was authorized to do the act on which the suit against the government is brought; and Mr. Floyd was not authorized, as Secretary of War, to accept drafts which were not to be paid by the United States, and were to be prevented from appearing at the treasury.
In every agency, whether general or special, the power actually conferred is, as between the principal and agent, subject to the limitation that it shall be honestly used toward the principal. But between individuals (as has been said) the liability of the principal to third persons is measured by their equities and is coextensive'with the apparent power of the agents, while in the agencies of the government its liability to third persons is restricted to the power actually conferred on its officer; and as this rule is made for the protection of the public interests, it prevails over individual equities, audits reason precludes any exception to it. It is not to be questioned that the United States may become parties to negotiable instruments and liable upon them according to the law merchant, but I think that they do not so become parties by the act of an officer, unlawful and fraudulent against them, and that the purpose and effect of the rule of agency pertaining to them is *603 to protect them against sucli liability, as well as against'any other fraud' of tlieir officers.
Mr. Bussell was objected to as a witness on .the ground of interest. But he was called against his interest. He was called by the defendants to prove they did not accept the bills. If this was proved, Mr. Bussell was liable to the holder; while if it was proved that the defendants did accept the bills, Mr. Russell was liable to nobody. And it was objected that Mr. Russell, being a party to the hills, could not discredit them ; but this rule is now confined to negotiable instruments, and is therefore a part of the law merchant, while (as has been"said) the procuration' or agency alleged was to be proved according to the rules of the common law exclusively.
The petitioner avers in his petition that these bills of exchange were accepted by Mr. Floyd “ in his official capacity, and in behalf of the United States.”
I think the evidence disproves this, and that the defendants are entitled to judgment.